UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Industrial Concrete | ) | Case No. 04-06671-TOM-7 |
| Contractors, Inc., | ) | |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| Andre Toffel, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 05-00049 |
| | ) | |
| Industrial Concrete Contractors, Inc., | ) | |
| d/b/a Industrial Communications | [1] ) | |
| Contractors, Inc., Chris Rutherford, and | ) | |
| Kelly Rutherford, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

This matter came before the Court for hearing on February 26, 2007 on the Trustee's Motion

for Summary Judgment (adv. proc. doc. no. 42)[1], the Debtor's Response to Motion for Summary

---

[1] References to documents filed in the adversary proceeding are indicated by the use of adv. proc. doc. no. References to documents filed in the main bankruptcy case simply indicate doc. no.

[2] It is this Court's understanding that the relief sought in the Motion to Dismiss Case is dismissal of the underlying bankruptcy case. Based on that understanding, at the February 26, 2007 hearing, the Court advised Debtor's counsel that if he was seeking a dismissal of the bankruptcy case that a motion to dismiss should be filed in the main case. On March 7, 2007, a motion to dismiss was filed in the main case (doc. no. 124). The Court therefore deems the Motion to Dismiss Case in this adversary proceeding moot and will issue a separate order with respect to the motion to dismiss in the main case.

1

Judgement (adv. proc. doc. no. 54), the Debtor's Third Motion to Dismiss Case[2] (adv. proc. doc. no. 55) and the Trustee's Reply to Debtor's Response to Motion for Summary Judgment (adv. proc. doc. no. 59). This Court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court has considered the pleadings and the law and finds and concludes as follows[3].

FINDINGS OF FACT

There are no disputed facts. At the outset, this Court notes that this is not Rich Rutherford's or the Debtor's first experience in this bankruptcy court. Prior to "jointly" filing on August 2, 2004, Rich Rutherford d/b/a Industrial Concrete Contractors, Inc. filed a chapter 13 petition on December 11, 2003 (case no. 03-10861)[4]. The case was dismissed on January 22, 2004 for failure to file proper schedules. Rich Rutherford then individually filed for chapter 13 relief on March 24, 2004 *pro se* (case no. 04-02689). The case was dismissed, without objection from Rich Rutherford, on May 12, 2004 after notice and a hearing on Ernest and Brenda Swafford's motion to dismiss (secured creditors of Rich Rutherford)[5]. Less than a month later,

---

[3]This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4]In this first filing, unlike subsequent filings by Rich Rutherford, the debtor was represented by counsel. The Court notes that the social security number filed in this first petition does not match the social security number filed by Rich Rutherford in all subsequent filings; however, the d/b/a of Industrial Concrete Contractors, Inc. and the fact that the address listed in this first filing matches the address used by Rich Rutherford in subsequent filings leads this Court to conclude that the parties are one and the same despite the discrepancy in social security numbers.

[5]The motion to dismiss sought a 180-day prohibition barring Rich Rutherford from filing a chapter 13 petition in the subsequent 180-days; however, the request for this relief was not

on June 3, 2004, Rich Rutherford again filed, *pro se*, a chapter 13 petition (case no. 04-04909). The Swaffords again filed a motion to dismiss and sought a 180-day bar on refiling. On July 13, 2004, the motion to dismiss was granted and the Court entered an injunction barring Rich Rutherford from filing a chapter 13 petition for the next 180 days. On June 4, 2004 (one day after Rich Rutherford filed a chapter 13 petition), Industrial Concrete Contractors, Inc. filed a chapter 11 petition (case no. 04-04928). The Swaffords filed a motion to dismiss and sought a 180-day bar on refiling in this case as well. Based in part on the motion to dismiss and for other deficient filings, the case was dismissed on July 12, 2004. Significantly less than 180 days later, on August 2, 2004, Rich Rutherford and the Debtor filed an alleged "joint" chapter 7 petition to initiate this case. The prior dismissal order did not address the issue of a subsequent chapter 7 filing. After notice and a hearing, and with the consent of Rich Rutherford, on December 17, 2004, Rich Rutherford was dismissed as a debtor[6]. The Debtor's Schedule A, as amended on January 31, 2005 and February 1, 2005 (docs. no. 49, 50), lists no real property. The original Schedule A, filed while both Rich Rutherford and the Debtor were debtors, likewise lists no real property (doc. no. 25). After Rich Rutherford was dismissed as a party to this bankruptcy case, Rich Rutherford filed a separate, individual chapter 7 petition on October 12, 2005, again *pro se* (case no. 05-10968). On November 3, 2005, after proper notice, a hearing was held on a notice to show cause why the case should not be dismissed for failure to file schedules. Rich Rutherford did not appear, the deficiency had not been corrected as of the hearing, and the case

---

granted at that time.

[6] An individual and a corporation may not be joint debtors, only an individual and his or her spouse may be joint debtors. 11 U.S.C. § 302(a).

3

was dismissed. Including the instant case, the Debtor and Rich Rutherford have filed a total of six cases, 3 chapter 13 cases, 2 chapter 7 cases and 1 chapter 11 case. In none of the cases (excluding the current case which is still pending) did the Debtor or Rich Rutherford receive a discharge. In fact, most of the cases lasted less than a few months and were dismissed for deficient filings and other cause.

On September 14, 2000, prior to the instant bankruptcy case, the Debtor purchased certain property located in Shelby County, Alabama (the "Parent Tract"). On May 29, 2002, the Debtor transferred the Parent Tract to Industrial Communications Contractors, Inc. ("Communications") for $1,000. On October 9, 2003, Communications transferred part, but not all, of the Parent Tract to Chris and Kelly Rutherford for $1,000. On February 17, 2005, the Trustee filed this adversary proceeding against the Debtor, Communications and Chris and Kelly Rutherford to avoid the transfer of the Parent Tract.

On January 6, 2006, while the adversary proceeding was pending, the Trustee filed a Motion for Authority to Sell Property of the Estate (the "Sale Motion")(doc. no. 84) seeking approval to sell part of the Parent Tract (the "Property"), as more thoroughly described in the Sale Motion. A hearing was held on April 24, 2006[7] at which, the Trustee, counsel for the Trustee, Rich Rutherford, Brent Davis, as counsel for Rich Rutherford, the Debtor, Denise Rutherford and Communications were all present. At the hearing, the Court granted the Sale Motion and the parties submitted a consent order that was entered on May 16, 2006 (the

---

[7]The Sale Motion was continued several times without objection from the Debtor or any party in interest. Also pending, and likewise continued numerous times, was a motion for relief from stay filed by Ernest and Brenda Swafford; they had a mortgage on the same real property the Trustee was seeking authority to sell.

4

"Consent Order") (doc. no. 516). Pursuant to the Consent Order, the sale of the Property was approved and the deeds purporting to transfer the Parent Tract, which included the Property, to Communications were declared invalid and *void ab initio* as a matter of law.

## MOTION FOR SUMMARY JUDGMENT AND RELATED PLEADINGS

The Trustee closed the sale and subsequently filed its Motion for Summary Judgment (adv. proc. doc. no. 42) in this adversary proceeding seeking a ruling by this Court that the Consent Order avoided the Debtor's transfer of the Parent Tract to Communication, the very relief requested in the complaint. In the Debtor's response, the Debtor contends that there is a factual dispute over whether the transfer of the Parent Tract or just the Property was invalid or void. Additionally, the Debtor challenges the Court's finding in the Consent Order, as consented to by this same Debtor, that the transfer was void as lacking consideration. The Debtor further alleges that such a finding can not be supported because the intent of the parties was only to consent to the avoidance for the purpose of the specific sale discussed in the Sale Motion (i.e. the consent was only as to avoidance of the transfer of the Property and not as to avoidance of the transfer of the entire Parent Tract, though this is not how the Consent Order is worded). In support of the Debtor's allegation that the Court's order finding the transfer void for want of consideration, the Debtor filed a self-serving affidavit alleging that consideration of $1,000 was paid by Communications to the Debtor, in addition to Communications assuming a mortgage debt of $30,000. No supporting documentation evidencing any payment is attached or was offered at the hearing.

5

CONCLUSIONS OF LAW

Summary judgment is only appropriate if no genuine issue as to any material fact exists and if the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56[8]. The party moving for summary judgment has the burden of demonstrating that these conditions are met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The court, in determining whether the movant met their burden of proof, must consider the evidence and view it in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1986). When the movant satisfies its initial burden, the burden shifts to the non-moving party. Miranda v. B&B Cash Grocery Store Inc., 975 F.2d 1518 (11th Cir. 1992).

In the instant proceeding, there are no genuine issues of material fact. The facts set forth above are not disputed and, indeed, are part of the public record in either this case or in the main bankruptcy proceeding. Pursuant to the provisions of the Consent Order, the transfer from the Debtor to Communications was invalid and set aside as if it never occurred, *void ab initio*[9]. There is nothing in the Consent Order limiting the avoidance of the transfer such that it can be legitimately argued that only part of the transfer from the Debtor to Communications was void; namely that the transfer was void only to the extent it transferred the Property was, the entire transfer (which includes the property that was subsequently "transferred" from Communications to Chris and Kelly Rutherford) was void. Thus the Parent Tract (minus the Property which was

---

[8]Made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

[9]Black's Law Dictionary defines *void ab initio* as "null from the beginning, as from the first moment a contract is entered into"; thus, the transfer was void from the beginning and the property never left the Debtor's possession. BLACK'S LAW DICTIONARY 1604 (8th ed. 2004).

6

sold pursuant to the Consent Order) continues to be owned solely by the Debtor. Since the ownership by Communications is invalid and void, any subsequent transfer from Communications is invalid, Communications cannot transfer what it did not have. At most, Communications could transfer to Chris and Kelly Rutherford exactly what it had, which amounted to nothing, no legal or equitable right existed. Because the initial transfer to Communications was invalid and *void ab initio*, the transfer to Communications has already been avoided, pursuant to the terms of the Consent Order, vesting the Parent Tract (minus the Property that was sold pursuant to the Consent Order) in the Debtor's estate. The Trustee has met his burden of proof and the Debtor has not presented any evidence to overcome the Trustee's motion.

Mere allegations, especially self-serving allegations, of factual disputes or regarding the intent of the parties, are not enough to defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The Consent Order specifically finds a lack of consideration for the transaction, a finding the Debtor consented to[10]. Whether or not consideration was given for the transfer of the Parent Tract to Communications is an issue that has already been resolved by this Court, judicial estoppel now bars the Debtor from asserting that no consideration was given. The Consent Order is unambiguous, the transfer was invalid and *void ab initio*. Allegations regarding the intent of the parties do not change the facts.

Further, and more importantly, the Consent Order was just that, a **consent** order, agreed to and approved in form by the very Debtor who now challenges the findings contained in the

---

[10] No motion to reconsider was filed and the Court declines to consider how the Court would have ruled on such a motion had it been filed with similar allegations regarding lack of consideration.

7

Consent Order, an order drafted by the parties and not by this Court. The Court is reluctant to set aside any of its prior orders after such a period time (and after the order has been enforced and the sale consummated) but is even more reluctant to unravel what was entered into consensually by the parties who were represented by counsel. The setting aside of consent orders has long been frowned upon by all courts. Justice Cardozo, in United States v. Swift & Co., 286 U.S. 106 (1932) stated:

> No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering from hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforseen conditions should lead us to change what was decreed after years of litigation and with the consent of all parties.

When the parties entered into the Consent Order, both sides were aware of the pending adversary proceeding challenging the validity of the transfer of the entire Parent Tract. The Debtor agreed to the Consent Order and received the benefit of that order. The sale was consummated and the lienholder of record paid in full[11], thus reducing the claims against the Debtor's estate. The Debtor agreed, when the Consent Order was entered, that no consideration was given for the transfer to Communications and that the transfer was *void ab initio*. That the Debtor did not foresee that voiding the initial transfer to Communications would, by operation of law, render meaningless and void any subsequent transfer of property from Communications to Chris and Kelly Rutherford is not grounds for denying summary judgment.

---

[11]The lienholders were Ernest and Brenda Swafford, the sale of the property and the satisfaction of their lien mooted their motion for relief from stay that had been pending up to that point.

8

A separate order, consistent with this Memorandum Opinion, and pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure, will be entered.

Dated this the 3rd day of April, 2007.

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge